Next up, we have number 24-11167, Stacey Hovahn versus Metropolitan Life Insurance Company. I think I might be on the wrong case. Oh, I'm so sorry. Yes, I skipped right over one. It's number 23-13407, Lauren Woods versus Progressive American Insurance Company. That's the one. I apologize, Mr. Mueller. Thank you very much. Good morning. May it please the court. My name is William Mueller. Sitting with me at counsel's table is Elliott Kula. Together, we represent the appellant, Lauren Woods. Now, the district court disregarded the party's pretrial stipulation and misapplied Florida bad faith law when it excluded the underlying uninsured excess verdict from our bad faith trial. We've raised this single issue. We've come at it two different ways. I want to begin, if I may, following first things first principles with the party's stipulations and how that was disregarded by the district court. Wasn't that a strategic decision that you made to try to keep those notes out? There was certainly, and I want to get into this, a revised stipulation, right? Heading into the trial, consistent with Rule 16, party stipulated to three essential facts. The underlying excess verdict, which was for an amount of $540,000, that Ms. Woods had suffered a permanent injury as a result of the automobile accident and the final judgment, which had the final amount minus the deductible and other amounts paid. Consistent with that stipulation, the parties submitted joint exhibit lists. Those joint exhibits included the underlying verdict and proof that Progressive had paid the policy limits following entry of the final judgment. Trial began. There was some brokering between the parties and the trial judge, and those stipulations, the amount of the verdict, was brokered. It became a revised stipulation where the jury was going to only be told that an excess verdict had been entered. They would not be told the amount, but they would be told that an excess verdict would be entered. I like to refer to that as the revised stipulation. That was based on the parties' pretrial stipulation, acknowledged by the trial judge as a stipulated fact, converted into essentially the same stipulated fact minus the amount of the judgment. It wasn't until the second day of trial, after opening statements had been made by the parties, after the first witness had been questioned, that the judge then, over plaintiff's objection, revoked the revised stipulation and informed the parties that the jury would not be told that there was even a judgment in Ms. Wood's favor, which led us to the predicament that we find ourselves in, where the jury was told to consider bad faith conduct without knowing that there was an injury in this case. What do we do with our holding in Noel Shows, which states, quote, that the question of whether evidence should be admitted in the relation to stipulation is a matter of law for the trial court to determine, and that determination is not restricted by the stipulation of the parties. What do we do with that? Whether a statement of law or fact, Your Honor. I'll read it to you again. This is just directly from the case. The question of whether evidence should be admitted is a matter of law for the trial court to determine, and that determination, the question of law, whether something should be admitted, is not restricted by the stipulation of the parties. What do we do with that? Well, I think, first of all, I think there are cases in which this court has done oppositely. We've cited several cases. I don't know that I've seen a published opinion where we've said the opposite of that principle that's there, and that makes sense. So imagine the parties stipulate to something that's clearly inadmissible or prejudicial, and we agree this should be admitted. We waive all authenticity, all hearsay. It's relevant. We waive all objections. The court in the conduct of the trial can't just say, I appreciate that the parties have stipulated to this, but I find this to be an overly prejudicial fact for the jury, or I find it to be excluded under a specific rule of evidence or a principle of law, and so I'm not going to admit it in. We would never say that's error, would we? I think so long as the trial judge followed the protocols of Rule 16e, which is a finding of manifest injustice, the trial court has the leeway and the discretion to set aside any stipulated fact. So I'm not sure this is a 16e. You know, the way you've just teed it up, I thought you were going to go somewhere differently than the way you've argued it right now, and that's okay. But you've argued it not as a 16e stipulation, but as an in-trial stipulation. 16e deals with the pretrial order and stipulations that are entered into there. And I've looked at the pretrial stipulation that's there, the actual 16e one, and that stipulation is clear to which it's entitled a concise statement of uncontested facts, so the facts uncontested, which will require no proof at trial with reservations of any. That's not a stipulation of admission or relevancy. That is a stipulation that we are not contesting authenticity or hearsay, meaning we don't need a witness to be able to, we don't need like... We don't need proof in order to... Right, we don't need the stamp judgment for you to come in as an authentic document. We don't need someone from the clerk's office to come in to authenticate the verdict or a juror. But that doesn't say that that's going to be admitted at trial, and that doesn't say that it's necessarily relevant, does it? Well, that's corroborated by the joint exhibit list, which featured the joint verdict. And joint exhibit list is just, these are the exhibits we will be admitting, we want to admit into trial. Not that they are admitted. And Progressive was clear in this discussion with the trial judge that they had stipulated to the admission of the verdict ahead of time. Again, admission, though, is not an admission, is not a statement of, we believe it is relevant and we are stipulating to admission over relevancy issues that you may have. But I just, I just, I think it could be problematic to, we should all want stipulations to get the nonsense out of the way to focus on real issues. But at the end of the day, the court, isn't the court not responsible for deciding what's, what needs to come into trial or not? I don't think so, Your Honor. I refer, I refer you to 11th Circuit case Alpert Auto versus Day-to-Day Imports. That case dealt with transcripts, which were unauthenticated, argued by the party that had stipulated to the admission of those, of those transcripts to be irrelevant to the issues. The court held the party to their stipulations. And that goes to authenticity, meaning, of course, if you stipulate, let me be clear. If there was an objection to the authenticity of the verdict, I think the court would absolutely be right to say, no, no, no, you agree to this in the 16e stipulation and that's there. But that's not what we have. What we have is you're, the parties have stipulated to something and you're arguing that the court must accept that, even though we haven't gotten to the relevancy part yet, but assume, even though I believe as a matter of law, this is not relevant. I just, is there a principle of law that says that? I think that, I think that is encompassed by 16e. We've cited cases where this court has upheld the wrong legal standard stipulated by the parties, the wrong legal remedy stipulated by the parties. All of these are foundational elements of a cause of action. The Alpert case deals with evidence. I think an irrelevant piece of evidence falls a little bit short of the wrong remedy or the wrong legal standard binding the district court judge during a trial. By the way, the only authority. Alpert's unpublished, right? Alpert, I believe. I'm looking at it. I think it's unpublished. It wasn't, yes, I believe it's unpublished. Can we get to the relevancy issue? Sure. Because I think it, even aside from the stipulation part, if it's relevant in the district court, excluded it because it's not relevant, that's potentially a legal error, right? I would agree, especially because it derives from the misapplication of law. So we're talking about a de novo review in this case and not an abuse of discretion. Tell me why you think it's, it's not as relevant. The underlying uninsured motorist verdict is quite elementally the injury that brings Ms. Woods to court in her bad faith case. There's no doubt that it's a, it's a requirement and there's no doubt that for damages, it is admissible. Yes. But she got into court. No one's disputing that. And here we're only talking about the liability piece of this, not the damages piece of this. So why in the liability piece, once she's able to get through the door and has the excess verdict, is it then relevant for a jury to hear? Because as the plaintiff, we have to tie the insurer's conduct, good, good faith or bad faith, to an injury, an injury, whether that is attorney's fees suffered as consequential damages, whether that is an excess verdict because they didn't stand the claim. I agree with you. That's damages, but that's not liability. What, what about the verdict is relevant for liability? It establishes an injury. Damages being a quantifiable, quantifiable amount of injury, but an injury, that's what brings us to the courthouse. That is what, and we can look at the jury instructions, what, what Progressive was supposed to guard against in this case, right? The jury instruction. But liability, meaning just what they did, the tort itself, is directed at, and this is from Lefort, Lefort or Lefort, efforts or measures taken by the insurer to resolve coverage dispute promptly or in a way, or in such a way as to limit any potential prejudice, the substance of coverage dispute or the weight of legal authority on coverage issues, the insurer's diligence and thoroughness and investigating of the facts specifically pertinent to coverage. That's, those are the things, the factors that we look at for first party bad faith liability. And how does a verdict go to those, those things? That's how we, we evaluate their culpability. Right.  We look at that, but we need an injury to be able to tell the jury, this is, this is the injury is the failure to do those things that they're supposed to do. In other words, there's duties. The duty is to resolve the coverage dispute promptly and in a way that's not prejudicial to weigh the substance of the dispute and legal authority and making a coverage decision to act diligently and thoroughly and investigating the facts. The violation of that duty is the injury. So how does the verdict go to that injury? You need the verdict in order to get to the courtroom. I agree with that. It's a predicate, but it's a legal predicate to get you through the door. It's a legal predicate because it forms our cause of action. Without it, we don't have an injury. Right. But it's a legal, in other words, it's like a pre-suit notice. You have to file the pre-suit notice, but the pre-suit notice isn't admissible. That just gets you to the court outdoor. Pre-suit notice isn't part of your cause of action. Right. And neither, neither is a verdict. Well, we can't get in the door without a cause of action. It's with the cause of action accrues based upon the underlying. Same thing with pre-suit notice. It accrues after you file your pre-suit notice. And after a certain period of time, I mean, I just don't see how the, the, the necessary step to do something is something for which the jury needs to be heard and to be considered when, when by admission, as I understand it, and I've read the entire record here by admission of plaintiff's counsel, the only liability, the only culpability, as you called it, is for mediation and before nothing to do with after mediation. You quote the, the bad acts, in other words, the lack of good faith. Right. I mean, it extended up to the point of their last tender of a settlement offer. I think you're, I think Mr. Marino's told the court, told Judge Reinhart at the time that it was up to mediate, mediation was the last bad faith act that they had. And I think around that time was when the breach of act, breach of contract action was filed, right? If, if I may, and I know I'm running into my time, if, if I may direct the court to the jury instruction that was given in this case, it's a jury instruction that evokes section 624.155, that's where we have the insurer's obligation to act in good faith. The jury was instructed to decide whether progressive acted in bad faith by failing to settle Ms. Wood's uninsured motorist claim. I'll put it to you plainly. How do we know there was a failure to settle unless we know there was a verdict in Ms. Wood's favor in the underlying claim? We don't. We can't tie, we can't, the inverse of failing to settle, the result of that, the consequence of that is a verdict in Ms. Wood's favor, having to litigate a case and having to prevail in the breach of contract case. So the jury in this case is told to evaluate, hey, did they fail to settle? Maybe they failed to settle, but did they act in good faith when along that path to failure of settlement? But they weren't told that there was a failure to settle, right? That's why we work backwards from the excess verdict, we look backwards determining the level of culpability, if any, of the insurance company that led to this injury, to this result. Without that, the jury's unmoored. It has no basis upon which to conclude that her interests were disregarded by the insurance company. So I'll pause there, reserve the rest of my time for rebuttal. Yes, Mr. Mueller, you get your full four minutes. You were answering our questions. Thank you. Thank you. Good morning, Your Honors. I'm Adam Duke on behalf of Progressive. Counsel, didn't the adjuster testify? You can go ahead, Ms. Kisa. Didn't the adjuster testify and was asked, was this claim settled? Did you settle this claim? Why didn't you settle this claim? Absolutely, Your Honor. The jury was specifically told there was no settlement here, correct? The jury was absolutely told there was no settlement. There was no confusion with the jury in that regard. And was the jury explained to why both sides were able to produce evidence as to why there was no settlement? In fact, that was the entire substance of the trial, really. What this trial was really about, and I want to focus the court to the Vest versus Travelers Florida Supreme Court decision, which I think is really instructive, if not just determinative. I assume you're going to point to page 1275, which says that the insurer has a right to deny claims that it in good faith believes are not owed on a policy, even when it is later determined by a court or arbitration that the insurer has denied or was mistaken. There is no cause of action if the denial was in good faith. Your Honor has accurately anticipated exactly. That was exactly the quote that I was about to present to this court. And I think it really is determinative of the issue here. And it's really what is the heart of this appeal. You know, the plaintiffs have argued that the court misapplied the law, and I believe they're completely incorrect. And what they've said throughout their brief is that Progressive improperly retried the underlying case. And as the court, the district court, properly recognized that was not the  What this trial was actually about was exactly what the Florida Supreme Court has told us it should be about. What a bad faith trial in a first party, uninsured motorist, you know, bad faith claim under 624-155 is about, according to the Florida Supreme Court and Vest, is looking at what information was known to, or at least available to, the insurance company at the time it was making its decisions. And then asking the jury to apply their understanding, the common sense understanding, the law that's instructed to them, and the facts that they hear during that trial and make an objective determination, was this good faith or not? Do you agree that if liability and damages were tried together, that it would be, the verdict would be relevant? If the jury was being asked to determine the issue of damages, then yes, the verdict would come in because it was, it is evidence of the damages that are awardable in this type of case. Did the parties agree to sever the liability and damages portion? They absolutely did. And I wanted to point out also the timing of that, that there was both the pretrial stipulation that took, that was entered into, but there was also at docket entry 204, a further stipulation by the parties prior to trial, that all issues of damages would be submitted to the court for determination in this case, rather than the jury, because there were in fact other issues of damages, additional damages that came up besides just the verdict. The specific issue was attorney's fees incurred by the plaintiff in the underlying case, not fees that they might be awarded as the prevailing party in the bad faith action, but additional damages that they were claiming, consequential damages, essentially arguing that because progressive acted in bad faith and delayed its, you know, payment of the policy limits in this case, we were forced to incur attorney's fees, costs, so on and so forth. The parties conferred on that issue prior to trial. And after the initial pretrial stip was entered, an additional stipulation was entered between the parties saying, all of that's going to go to the judge. It's not going to be a question for the jury. This is at page one of docket entry 204. Correct. Parties have conferred and agreed that the qualification of Ms. Wood's damages can be resolved by the court post-trial should Ms. Woods prevail at trial. Absolutely, your honor. So by that stipulation, all issues of damages were going to be decided by the judge, by the court and not by the jury. And it's our position, and I think the court correctly ruled, that therefore any issues, any evidence related solely to damages and not to the liability question was not relevant because it wasn't what the jury was being asked to  And in this case, I still have not heard, in my opinion, any articulation really of why that verdict would be relevant to liability. What about the, I think the, I think there's a reason why your opposing counsel started off with the stipulation. And that's because, or the, what he calls the stipulation. And that's because there does seem to be a ring of unfairness where you guys sit down before trial as you're required to do under rule 16 and you say, listen, here are the stuff we're not arguing about. Here's the stuff we are arguing about. Here's what we need the jury to decide. Here's not what we need the jury to decide. You put out a joint exhibit list. Here are the exhibits that we're going to admit, we're going to agree to admit into evidence that we're not contesting. And then during the course of this, when, and I will say in fairness, I think, you know, Judge Reinhart sort of brought this up on his own as he was thinking through the issues as you read the record, but at that point you do jump in and say, not you, but the, the trial folks here jumped in and said, hey, you know what, I, I think this shouldn't come in and you know, we should exclude it. What, what is the, how should we evaluate the fairness of that? Well, yes, Your Honor, because let me explain because it was me. I was the trial attorney there. And as Judge Covington pointed out, it really, all of this was prompted by the appellant's counsel on the very beginning of the first day of trial, coming in and raising the issue of the admissibility of the claims notes related to what happened at the trial, right? This is how this actually evolved, right? And I, I don't think it was a rug pull or a, a, you know, sort of trickery about what was going to happen. I didn't use that. I didn't use that. And Your Honor, I'm sorry. I shouldn't, I didn't want to make it dramatic or attribute that to you. I'm just, I just don't, I, as, in addressing the fairness, the way that this occurred is that Mr. Moreno, counsel, trial counsel for the plaintiff in the case, contacted me the day before trial and said, hey, we're going to raise an evidentiary issue regarding these notes, and this is what's reflected on the record on that first morning, the plaintiff's counsel raises this issue and says, hey, we don't think it should be admissible what happened at the trial in the underlying, you know, breach of contract UM action. My response to that was, well, if that's the case, then the verdict becomes highly problematic here because the plaintiffs are going to use this verdict to show in hindsight, you know, sort of ex post facto that progressive's offers in this case were inadequate. The progressive didn't evaluate this case correctly because a jury later determined that the case had a value of, you know, beyond what progressive had offered, and I said, if that's going to be the case, if they're going to introduce evidence of what that verdict was, then progressive has to be able to explain to the jury, this jury, what that first jury heard in reaching that verdict. And that is really where the substance of the argument around this issue focused on that first morning, because they were trying to say, well, you can't tell them what happened at that trial. And I was saying, progressive was saying, well, if you're going to tell them the result of that trial, then in order to not be prejudiced and not have this jury think, well, it's just obviously progressive was wrong because there was this verdict that was for double the policy limits, we've got to be able to say, well, things changed, you know, from the time that we made our last offer, this additional, you know, these additional things occurred, including this testimony that came in at trial, this happened at trial, that happened at trial, all that. And that jury heard all that evidence when they reached the verdict. And I, you know, I can sit here and tell you that that evidence wasn't available to progressive six months or a year before when they made the offers that they made. And the judge considered all of this and decided, well, look, this is going to lead to confusion. It's going to lead to a trial within a trial. And really there's no relevance to the verdict anyway. And he asked plaintiff's counsel, Mr. Marino, are you, when are you saying, as your honor pointed out on, on the appellant's argument, when did the conduct occur? What is your position as to when progressive acted in bad faith? And plaintiff's counsel stipulated that that had occurred prior to the trial, that he was not arguing that there was bad faith conduct during the trial. In other words, there could be a claim in some instances that the representation provided at trial was itself bad faith.  There, there could be in other cases, it's possible a verdict, you know, could be admissible, but it's not this case, right? In this case, the plaintiff then stipulated at trial that the relevant conduct that they were complaining of, the bad faith conduct occurred prior to that underlying trial, that first trial. And so the judge then, you know, in our opinion, obviously appropriately ruled, well, okay, everything after that isn't relevant, right? If you're saying the bad faith occurred prior to X date, then what happened after X date is just sort of obviously not relevant to whether the conduct on X date or before was in bad faith or not. And that includes what happened at the trial, the notes that we had initially sought to, to, you know, introduce and the verdict itself, right? Because the issue here has always been in this case, and this is what was argued extensively at the trial and adopted by Judge Reinhardt, that what the plaintiffs were really trying to do with this verdict and the real prejudice of this verdict, because it's not only just irrelevant, it is irrelevant, but it was also a 403 analysis that well, you know, as well that any potential relevance would be outweighed by the undue prejudice because the plaintiffs were trying to use the verdict. Was that the district court's ruling? I thought at the end, I mean, there's a lot of back and forth on this before there's an ultimate decision, but I thought the bottom line was more of a relevancy issue. He just, at the end of the day, Judge Reinhardt just saw this as, this is just not relevant to this sort of trial. I don't recall him as, as an alternative making a 403. I think you're right that in terms of like dumping in the entire trial, that's the case, but with regard to the verdict in particular, it seemed to rest on relevancy. Do I have that wrong? I think relevancy was the primary issue. I think he believed it was just irrelevant. And so you don't even really need to get to the 403, but I do think there was some discussion about the, you know, the danger of undue prejudice if there was any, you know, possible relevance at all. And I think the issue is that the plaintiffs, and this was very much discussed and was discussed by Judge Reinhardt as the basis or part of the basis of his ruling, was a concern that the plaintiffs would use the verdict as ex post facto hindsight is 2020 because this verdict happened after the fact, that is evidence that back in a prior time, you know, a year before it or whatever, Progressive did not value this case correctly. And so there was discussion and Judge Reinhardt, you know, discussed this and as the part of the basis of his ruling, that even if there were some, you know, world in which this were admissible or some reason that this would be admissible, because what the plans were arguing was, well, it's an element of the, of the cause of action. You heard that here. Why is that wrong? Well, because just because something's an element doesn't mean it's admissible at the trial. I mean, this is just like a simple negligence action in which liability is admitted and you have a trial on damages. I mean, I mean, what's the difference really, right? And bad faith cases are often like this, where damages are going to be decided by the court. You would tell the jury that, that the parties have agreed that, you know, the defendant is liable here and we're here just to determine how much injury or what the quantify the injury, right? Sure. And I think what we told the jury in this case was that you're to decide yes or no, was there liability? And if your decision is for the plaintiff, the court will decide the measure of damages. I mean, I think that that was part of the jury instructions or maybe it was on the verdict form. That, that if you say yes, it's not for you to decide the damages, the court's going to do that. So, I mean, it really, it's, you know, liability comes before damages, but, but it's the same thing. I mean, it's just like a, like a for example, this happens all the time in auto negligence cases where you have aggravated liability factors, like somebody's DUI, but you admit liability specifically for the purpose of keeping that evidence out, right? Because it's not for the jury to decide. The one question the jury's being asked, the one issue of fact that they have to decide is what were the damages in that case? Conversely, in this case, is a necessary component of liability, some sort of excess judgment or award or an arbitration. So interestingly enough in a first party case, no. And I want to talk about this because I think this is actually an important thing that needs to not be missed here that the plaintiffs rely very heavily on third party bad faith cases. And they argue this causation element that does not exist in a first party bad faith case under 624-155. This is not a third party case where the bad faith conduct complained of caused damages to the plaintiff in the form of an excess judgment that they are then trying to recover. In fact, there is no excess judgment in this case. There was an excess verdict, which, which, I mean, but it's an important distinction. It's not the same because in a first party case. Something of that nature is required to get through the court. There has to be, so Vest talks about this, you know, and it also cites the Blanchard and really the substance of Vest deals with this issue. There has to be a determination that there was a breach of the contract. We have to know that. And the plaintiff has quantified whatever their damages might be. That's the Fridman case. So we know those things, but that doesn't mean that it's for the jury to then decide, you know, for the jury to consider in deciding whether there was bad faith or not. Those are just conditions or precedent essentially, or elements of the cause of action, but they don't have to be submitted to the jury. And it's important here, like I was saying that, you know, it might be in third party bad faith cases, a judgment is more likely to be admissible or relevant, or could potentially be relevant to the issue of liability. Because in those cases, the conduct has a causal connection. It causes this judgment, which is a damage of the insurer. But in a first party case like this, the verdict amount is only recoverable because Florida statute 627.727.10 says it is. After the McLeod decision, which was, you know, came out after 624.155 was originally passed, said, well, you can only get damages that are actually caused by the bad faith. And that's not an excess verdict in a UM case because the bad faith didn't cause that, the accident did. McLeod said, so you can't get those. So the legislature passed an amendment to the UM statute, subsection 10, saying, well, in these cases, you can get those, even though it's not caused by the bad faith. These are just statutorily awardable damages, which is another reason you submit it to the court. It's not really an issue for the jury to decide, did, you know, the conduct here cause these damages? It's just, there are damages that the law says can be recovered if you prove liability. So in this type of case, in this case in particular, and in first party UM cases under 624.155, it's not relevant what that verdict was, what that amount was, what damages a court will ultimately determine are awardable under the law. There was going to be all kinds of legal arguments about what damages were awardable under the law. That was the purpose of the second stipulation on docket entry 204, because there was disputes about the, how to quantify the attorney's fees and various other things. There was going to be a whole nother like sort of evidentiary hearing, you know, bench trial in front of the court on damages. Had the plaintiffs prevailed, but they didn't in this case. And I, again, throughout the plaintiff's briefing and the argument, I don't believe they have ever articulated a theory as to why the verdict amount is liable to determining what this Forest Supreme Court said invest, which is the issue is the insurer has a right to deny claims that it in good faith believes are not owed under a policy, even when it is later determined by a court arbitration, the insurer's denial was mistaken. There's no cause of action that the denial was in good faith. So the issue is what did the insurance company believe? You know, did they believe it in good faith at the time, based on the circumstances, the information that were available at the time or not? And it's an objective standard. The jury looks at all that and they can say, well, maybe they thought they were doing the right thing, but we don't think they were objectively. This was unreasonable. This was bad faith. The jury can decide that. But the question is based on what they knew, were they acting in good faith or not, not something that, you know, based on something that happened down the road, something that happened afterward, let me just ask a quick question, your time's up, let's just say the judge should have admitted that evidence and given a limiting instruction to the jury. Tell me why, even if that had been the case, is it your position that it was just a harmless error? Yes, Your Honor. I mean, absolutely. I mean, this is that, that is the other thing that we didn't really, you know, discuss, no, it was not really brief that much as to whether it was just a harmless error. Well, absolutely. And this is a, this is a abuse of discretion standard, right? This is an evidentiary issue that as Judge Luck pointed out is within the discretion of the trial court. And again, I think Your Honor is absolutely correct that this is not an abuse of discretion. I mean, at worst, we don't think it was relevant and we don't think it should have been admitted. Right. But even at that point, but even assuming for the sake of argument that it should have, that there was some relevance for it and it should have come in, it doesn't go to the heart of the issue and that's why it is a harmless error, right? I mean, what, even if there was some theoretical relevance to it, because it's an element of the cause of action, which it seems to be what they primarily are arguing, if it's not going to the real heart of the issue of what the jury's being asked to decide based on what the Florida Supreme Court tells us in Vest, then yes, I would say it is absolutely a harmless error because it is not a dispositive piece of evidence. Thank you. Thank you, Your Honors. Thank you. May it please the court. Let me begin where progressive left off. A court will search their answer brief in vain for the terms harmless error. They did not argue that as a defense to the trial court's exclusion of the underlying verdict on appeal. And, and frankly, if I'm right, given the relevancy of the underlying verdict, of course it's harmful error. It is fundamental to the bad faith standard. That's where I want to jump off from. I fundamentally disagree with how they're characterizing how they have to try their bad faith case. There is no re-litigating what happened in that breach of contract action. They were present for it. They had a defense there. They, they had all of, all of the reason to vigorously defend against that judgment in that case. They don't get to re-litigate the witnesses there, their impressions of those witnesses in the bad faith, in the bad faith context. Let me look at two cases quickly and tell you exactly what the Florida Supreme Court has said an insurance company ought to do with the presence of that excess verdict in a bad faith trial. This is Fridman, 2016. Just because of the, the amount of the UM verdict is an element of damages under section 627727, the insurer is not precluded from explaining its actions in failing to pay the policy limits when demanded and presenting its case for why it did not act in bad faith in the handling of the court. I know, but doesn't that set the relevancy of it? You're right on the back end. I don't disagree with you. And that is the, if that had come in, that is the, what the remedy would have been for them. But, but that beginning part is I think what the focus needs to be. In other words, this is relevant for the damages piece. And without that, it seems to lose what relevancy it has with regard to the liability piece. There, I disagree, Your Honor. Here, here's another quote from a fourth district court of appeal case, the Padden case. And Padden does not hold that the verdict is essential to it, but it features a fact pattern that actually featured the verdict at a first party bad faith trial. Parties moved in limine whether the verdict should come in or out. The parties like here had stipulated to allow the judge to handle the damages portion of the bad faith case. And the trial judge allowed the verdict to come in and the fourth district seemingly had no problem with its admission into evidence. Yeah, but it wasn't, that wasn't directly litigated. Agreed. Agreed. Now, but here's the quote, to a limited extent, GEICO could have addressed damages in the bad faith trial by arguing that the amount of damages awarded in the first trial could not reasonably have been foreseen. So there was an absence of bad faith. That in a nutshell is what their onus is to defend against a bad faith action. That verdict happened, but here's the information we had at the time, here's how an objective, reasonable insurance. Doesn't that get to the causation issue that he raised though, the reasonable foreseeable part. In other words, there is a distinction between first and third parties that you, and I don't blame anybody. The Florida Supreme Court has not been as consistent in separating those out as I think it can and should be. But, but the point is that damages do not have to flow from the negligent acts, that you either are negligent in handling the claim and the damages flow from the verdict in excess of what the, of what the liability coverage would be. Right. I think in theory, I understand, I understand that his argument that a third party argument, I mean, that is the law, is it not? Well, I, that's where I disagree. I think by legislative design, and this is what the Florida Supreme Court has said in Ruiz and most recently in Fridman, first and third party causes of actions are similar. There, there is no, even though there may be an abstract difference based on the statutory design, right? Both first and third party causes of actions flow from 624, 624-155, sub 1B1. We're looking at the same provision to determine whether they acted in good or bad faith. Damages then split out depending on whether it's a first or third party claim, but the damages provisions, ours here is 627-727-sub 9, features an excess verdict as a potential font of damages in the case, right? So, so there, there is a abstract difference that has been washed away by how the statute has been designed when first party bad faith actions came to light in the eighties, right? That's what McLeod, that's that McLeod case talked about. There was a gap in, a 10 year gap where the damages provision 627-727 didn't exist. So the first party bad faith plaintiff could not claim the excess verdict as part of his damages. When the statute was enacted in 1992, that now became part of his cause of action that became part of the injury, I'm running out of my time, but just imagine a scenario where a, an insurance company acts dishonestly, unfairly to insured, but pays the policy limits. Do we have a cause of action? Because they violated the terms of the statute? No, we do not. The injury would be an excess verdict for failing to settle. That is the crux of our cause of action. Respectfully ask the court to reverse the final judgment and remand for a new trial. Thank you.